IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KYLE GUAY,<br><br>        Plaintiff,<br><br>v.<br><br>SIG SAUER, INC.,<br><br>        Defendant. | Civil Action No.: 1:20-CV-00736-LM |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S
MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF OTHER INCIDENTS**

    Sig's Motion should be denied.

**I.**    **Factual Background**

    Guay testified that on the cold evening of Tuesday, January 28, 2020, as he was

unleashing his dogs after a walk around 6:00 p.m. in Hillsboro, he began to remove his holstered

P320 from his belt.  He pushed down on his waist belt with his left hand, and then pulled the

holstered P320 up with his right with the barrel pointed slightly to the rear of him.  He "wiggled"

the holstered P320 to get it off his belt, and "then bang, the gun went off":

> A.    . . . So then I remove my coat, I release the dogs from the leashes at that point, and then therefore after I reach to - - I push down with my left hand on my appendix area, the belt, I keep the belt down, and then I pulled up on the P320.  And so that when [I] wiggled it slightly, so the barrel was facing backwards, and then bang, the gun went off.
>
> . . .
>
> Q.    No part of your hand is touching the pistol itself other than your thumb may be in contact with part of the slide?
>
> A.    No, no, the thumb is on the holster, where the middle of the slide would be inside the holster.

Q.    Got it, got it.

(Ex. 3, Guay dep., pp. 88-93).[1]

The bullet perforated his pants.  It entered his right thigh, tunneled through it, and exited his lower right thigh as shown here:



Officer William Bannister and Sergeant Nicholas Hodgen of the Hillsboro, New Hampshire police department responded to the scene of the Guay shooting.  Officer Bannister was the first to arrive.   He corroborated Guay's testimony that the P320 fired in its holster as he was attempting to remove the holstered weapon from his belt:

Q.    Did you speak with Mr. Guay when you came in?

A.    I did, yes.

---

[1]    All citations are to Guay's summary judgment opposition memorandum.

Q.      And what did he say, if you recall?

A.      He told me that he was attempting - - he was standing by the door, and he was doing something he did every day, and he grabbed a hold of the holster on the outside, showed me what he was doing, grabbed a hold of his holster on his pants to take it out of the pants, and that is when he said the firearm went off.

. . .

Q.      . . . did you undertake any steps to determine whether the pistol was fully seated in the holster at the time it discharged or whether it was partially withdrawn from the holster based on the damage to the holster?

A.      So the pieces we gathered, this might be a little involved, the pieces we gathered, it appeared as though where it broke was that the pistol was fully seated, based on like where the hole was in his pants just underneath the holster.  You guys have the pictures, right?

Q.      Yes.

A.      Based on where we saw that and how the holster broke apart, that is why we believe the firearm was fully seated in that holster.

(Ex. 4, Bannister dep., pp. 18-19, 27-28).

Sergeant Hodgen was the next to arrive.  He also testified that Guay stated that his P320

fired when he was removing his holstered weapon from his belt:

Q.      I can put it up on the screen, if you need me to.

A.      So yes, there was a moment in which I did speak with Officer Bannister, Jacquelyn and Kyle [Guay].  This is going to be after I spoke to Jacquelyn alone, and then during that conversation, Kyle had stated that he had been pulling his holster off his belt after arriving from work when the round went off.

And he testified that the holster damage was consistent with his opinion that it fired inside

the holster:

Q.      Is it damaged?  I am looking at the photograph down here on the lower - -

A.      As you are looking at that picture, what is going to be the lower right-hand side,
        there are pieces of the plastic of the frame of that holster that are all blown out of
        that lower right-hand side.

Q.      And was that consistent with your opinion that the gun was in the holster when it
        fired?

        Mr. Gibson:  Objection to form.

A.      Yes.



(Ex. 5, Hodgen dep., pp. 23-24, 37-38).

        Guay's girlfriend, Jacquelynn O'Leary, was the first person to arrive at the scene.  She also

testified that Guay stated his P320 had fired in its holster:

Q.      Did you ask him what happened?

A.      I did ask him what happened.

Q.      And what did he say?

4

> A.   He said that he had taken the dogs for a walk.  He was coming back like he normally does.  After he hangs the leashes up, he goes to take his holster off, and he went to go remove the holster, the gun shot.
>
> . . .
>
> Q.   Did he say he pulled the gun out, or he didn't say anything about the gun?
>
> A.   He only pulled the holster off.
>
> Q.   Did he say anything - - I am sorry.  I didn't hear.
>
> A.   The gun never left the holster.

(Ex. 6, Jacquelynn O'Leary dep., p. 17).

The content of the contemporaneous Hillsboro Police Department official report on the incident is also omitted by Sig in its Statement of Undisputed Facts.  The narrative of Sergeant Hodgen states:

> At this point medical personnel were beginning to arrive.  As the medical personnel were arriving, I photographed the firearm, the spent round, some of the living room and kitchen area and continued to speak with Officer Bannister, JACQUELYNN and KYLE.  I learned that KYLE has been pulling his holster off his belt after arriving home when the round went off . . . At this time this does appear to be an accidental discharge while the firearm was in KYLE's holster.

(Ex. 7, January 28, 2020 Hillsboro Police Department report (Hodgen narrative), pp. 1, 3).

The narrative of Officer Bannister states:

> I asked KYLE what had happened.  He stated that he was attempting to take his firearm off his right hip in the holster, when the firearm went off.  He stated that he did not touch the trigger assembly on the firearm because it was still fully in the holster, and had wrapped his hand around the holster to remove it from his pants . . . It is my belief that the firearm did go off accidentally, and inside the holster as stated by KYLE.  There is no reason or evidence to suggest KYLE negligently, purposely discharged the firearm in to his own leg.  This ended our involvement in the case.

(Ex. 8, January 28, 2020 Hillsboro Police Department report (Bannister narrative), pp. 1-2).

II.    **The law governing other substantially similar incidents**.

Evidence of other incidents is relevant and admissible at trial if the proponent can show that the other incidents occurred in circumstances that are substantially similar to the incident in question. *Downey v. Bob's Discount Furniture Holdings, Inc.,* 633 F.3d 1, 9 (1st Cir.2011); *Moulton v. Rival Co.,*116 F.3d 22, 26–27 (1st Cir.1997).

III.    **Guay should be allowed to introduce evidence of other substantially similar incidents.**

At least seven un-commanded discharges of the P320 have been captured on video consistent.   Hyperlinks to videos of five of these incidents:   Roscommon Michigan (February 2016); Philadelphia's Suburban Station (August 2019); a Milwaukee Police Department parking lot (January 2021); Saint Clare Prison in Detroit, Michigan (August 2021); and Rose Casino in Lousiana are here:

1.    *Roscommon, Michigan February 2016.*  From 6:00 minute mark on:

https://vimeo.com/geomatrixproductions/review/327346849/4f8af65fc0

(password:  richardson320).

SIG claims that the Roscommon department "found" that the officer's "seat belt buckle" somehow dove into the officer's holster and pulled the trigger in this case.  However, the video clearly shows in several frames that the seatbelt is in place and fully retracted.  The video is the best evidence of what happened that day, not a Sig-influenced local police department whose "investigation" of the matter did not even include questioning of Officer Richardson or the conservation officer on the scene.  Sig improperly took possession of the gun and worked closely with the department and advised that "scratch marks" on the trigger guard meant that "something" got in the trigger guard.  Sig has offered this gratuitous "explanation" for so many of these

incidents that it now lacks all credibility and is clearly a cover story.

The video itself, when viewed frame by frame, proves that the assertion that the seat belt buckle pulled the trigger is entirely false. Judge Leonie Brinkema of the Eastern District of Virginia, moreover, ruled that the bodycam footage of the incident could admitted as evidence of a substantially similar incident at trial, over Sig's protests. *Vadnais v. Sig Sauer, Inc.*, 3:2018cv00605, docket No. 156 (ORDER: For the reasons stated in open court, it is hereby ORDERED that the defendant's Renewed Motion in Limine to Exclude Evidence Regarding Future Damages [Dkt. No. 116] be and is DENIED, plaintiffs Motion in Limine to Admit Evidence of Other Incidents [Dkt. No. 129] be and *is GRANTED with respect to the Roscommon, Michigan incident* and DENIED with respect to the Cinnaminson, New Jersey incident. Signed by District Judge Leonie M. Brinkema on 5/17/19. (yguy) (Entered: 05/17/2019).

The reflection of the officer standing stunned outside his patrol car shows his holstered P320 has nothing attached to it. The officer himself states in the video that the seatbelt did not make his gun fire and notes that the casing did not eject. A jury should be allowed to view this video and reach its own conclusions.

2.    *Southeastern Pennsylvania Transportation Authority (SEPTA) officer Suburban Station, Philadelphia August 2019*. The holstered discharge incident has occurred as soon as video begins. At 2:20 to 2:40 mark the officer expressly states that the gun is still holstered.

https://www.dropbox.com/s/rp5kmsth6xp0zcb/SEPTA000083.AVI?dl=0

3.    *Undercover Milwaukee officer in police department parking lot, Milwaukee, Wisconsin January 2021*. Holstered discharge is around 1:20 mark. Note that the officer's hands

are full.  The gun launches out of the holster as he exits the car.  The gun hits the side of his car

and goes up in the air and then falls to the ground.

https://www.dropbox.com/s/xdrs8gzkwgy222k/clip0001.avi?dl=0

     4.     *Saint Clare Prison, Detroit, Michigan August 2021*.  The discharge occurs early in

the video when the officer is placing his gun its holster.

https://www.dropbox.com/s/qv4iszuuyety5dl/2021septclip0243.avi?dl=0

     5.  *Rose Casino, Louisiana, December 5, 2021*

     Off duty ICE agent's holstered p320 discharges merely as she moves her handbag toward

a casino gaming table.  Occurs at 50 second mark.

 https://smbb.sharefile.com/share/view/sba218fa9e07241328fb5b41a7924fe79

     Sig is essentially arguing that none of these incidents can be shared with the jury.m  It

argued the same and Vadnais and Judge Brinkema rejected that argument.  The videos

themselves are public records and are the result of extensive discovery investigation into other

substantially similar incidents of the P320 discharging by itself over the last six years.  The

SEPTA officer himself was deposed and Guay has identified his deposition excerpts which state

that his went off merely when he put two hands on a subway golf cart and stood up.  And he

stated that nothing "got in his holster."

     It would be hard to conceived of situations that are more similar than what happened to

Mr. Guay.  Exact identity is not required as Sig itself states.

     For the reasons stated, Sig's Motion No. 2 should be denied and the Court can decide on

an individual basis which other incidents can be shared with the jury.

Respectfully submitted,
KYLE GUAY
By his attorneys,
JEFFREY S. BAGNELL, ESQ., LLC

Date:  June 29, 2022                    By:    /s/ *Jeffrey S. Bagnell*
                                               Jeffrey S. Bagnell
                                               Federal Bar No. CT18983
                                               Admitted Pro Hac Vice
                                               Jeffrey S. Bagnell, Esq., LLC
                                               55 Post Road West, Suite 200
                                               Westport, Connecticut 06880
                                               (203) 984-8820
                                               jeff@bagnell-law.com

and

                                        By:    /s/ Benjamin T. King
                                               Benjamin T. King, NH Bar #12888 Douglas,
                                               Leonard & Garvey, P.C. 14 South Street,
                                               Suite 5
                                               Concord, NH 03301
                                               (603) 224-1988

                                               benjamin@nhlawoffice.com

## **CERTIFICATION**

I hereby certify that on June 29, 2022 a copy of the foregoing was electronically filed and served on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system of by mail to anyone unable to accept electronic filing through the Court's CM/ECF System.

___/s/ *Jeffrey S. Bagnell*___
Jeffrey S. Bagnell

- 7 -