UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

_____
                                        :
KYLE GUAY,                              :       CIVIL ACTION NO.:
                                        :       1:20CV00736(LM)
        Plaintiff,                      :
                                        :
                                        :
v.                                      :
                                        :
SIG SAUER, INC.                         :
                                        :
                                        :
        Defendant.                      :
_____:        OCTOBER 11, 2022

**MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL OR, IN THE
ALTERNATIVE, TO AMEND JUDGMENT**

**I.      Summary**

        Plaintiff Kyle Guay moves for a new trial or, in alternative to amend judgment, on the

grounds that 1) the divided jury's ultimate verdict was against the weight of the evidence and the

product of prejudicial language in the *Allen* charge, 2) there were two errors of fact made.

        First, in its September 8, 2022 Order, the court wrote that Guay "relied on" the language

in two Sig press releases that "persuaded" him there were no safety concerns with his P320 and he

saw no reason to send it in for repair."  Docket No. 108, p. 8.  Guay respectfully contends that this

was an error of fact.  Sig's failure to communicate to Guay that vibration could make his P320 fail

was a basis for his deceptive practices claim under the CPA, i.e., that Sig did ***not*** inform him that

vibration could make it fire - - and, instead, expressly assured him that it was "safe" "in its current

configuration" in 2017 as part of its website announcement of the Voluntary Upgrade Program.[1]
The gun then shot him two and half years later in January 2020 *not when it was dropped*, but
when he merely jostled his holstered P320 to remove it from his belt.

Guay testified that had he read that vibration could have made his P320 fire, he would
have stopped carrying it.[2]  At no time did he testify that he ever saw much less relied on the
August 4, 2017 press release in concluding that his P320 was still safe.  In a sleight of hand, Sig
omitted the August 4, 2017 press release vibration language from its website announcement
regarding the voluntary upgrade, and re-defined the problem to be *limited to* the gun being
dropped.  Plaintiff Trial Exhibit 25 (Ex. 1); Plaintiff's Trial Exhibit 9 (Ex. 2).  This was
reckless and deceptive conduct toward owners of the original P320 like Guay that put lives in
danger.

Second, the Court wrote that there was "no evidence" introduced a trial that Sig Sauer
"had any reason to issue a recall for the accidental misfire problem that Guay later experienced."
Docket No. 108, p. 7.  This was, also, an error of fact.  Guay introduced Sig's *own* August 4, 2017
press release in which it openly admitted that ***"recent events"*** have indicated that not merely
dropping the P320 could make it fire, but that vibration could make it fire.  This constituted
an admission and direct evidence of knowledge *on Sig's part* of non-drop related discharges of
the P320 as of August 4, 2017 at the latest.  Moreover, the release was issued some 2.5 years
before Guay's P320 nearly killed him.  Yet Sig issued no safety warning or mandatory recall

---

[1]     The Court's language on this specific issue reads:  [i]n any event, the evidence at trial established that, with
respect to Guay, the language of the press releases (and the information on Sig Sauer's website) persuaded Guay
there were no safety concerns with his P320 and he saw no reason to send it in for repair."  Docket No. 108, p. 8.

[2]     *See Guay* testimony, afternoon of day 1.  Pinpoint cite to be provided upon receipt of the Guay portion of the
trial transcript.

notice for the P320 at any time thereafter to the present day, even though it had for other products. Plaintiff's Trial Exhibit 17 (Ex. 3).

**II.**    **Governing Law**

**A.**    **Rule 59(a)**

Under Rule 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues -- and to any party -- ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A district court's power to grant a motion for new trial is much broader than its power to grant a [Rule 50 motion.]" *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009).

A trial judge may grant a new trial if the jury's verdict is "against the weight of the evidence" or if "action is required in order to prevent injustice*." Id.* at 436. A district court can independently weigh the evidence when evaluating a motion for a new trial under Rule 59 and therefore can determine that a witness or evidence lacks credibility; in other words, the court need not take the evidence in the light most favorable to the nonmoving party. *Id.*

**B.**    **Rule 59(e)**

"The purpose of [Rule] 59(e) is to allow the court to correct or amend a judgment in the event of any manifest errors of law or newly discovered evidence*." Czekalski v. Wrenn*, No. 17-CV-557-JL, 2022 WL 909565, at *1 (D.N.H. Mar. 29, 2022), citing *Perrier-Bilbo v. United States,* 954 F.3d 413, 435–36 (1st Cir.), *cert. denied*, ––– U.S. –––, 141 S. Ct. 818, 208 L.Ed.2d 399 (2020). In general, successful motions for reconsideration must show an intervening change in the law, a manifest error of law or fact underlying the judgment, newly-discovered evidence that could not have been produced before the entry of judgment, or manifest injustice if

reconsideration is denied. *See Markel Am. Ins. Co. v. Diaz-Santiago,* 674 F.3d 21, 32 (1st Cir.

2012) (citing *Marie v. Allied Home Mortg. Corp.,* 402 F.3d 1, 7 n.2 (1st Cir. 2005)).

**C.    Consumer Protection Act**

The CPA is a consumer protection statute with "broad remedial goals." *LaChance v. U.S.

Smokeless Tobacco Co*., 156 N.H. 88, 101, 931 A.2d 571, 582 (2007) ("[t]o conclude otherwise

would erode the broad remedial goals of the CPA and elevate form over substance").  In

determining which commercial actions, not specifically delineated, are covered by the act, the

New Hampshire Supreme Court has "employed the "rascality" test." *See Barrows v. Boles,* 141

N.H. 382, 390, 687 A.2d 979 (1996). Under the rascality test, the objectionable conduct must

attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble

of the world of commerce. *Moran,* 151 N.H. at 452, 861 A.2d 763.

**III.    Discussion**

**A.    *The verdict was against the weight of the evidence.***

In its January 8, 2022 Order, the Court wrote:

> The court found Guay credible in every respect.  Specifically, the court credits Guay's
> testimony that the gun was still fully inside the holster when it discharged.  With the gun
> fully in the holster, Guay could not have accessed the trigger; it would have been
> impossible for him to have accidentally pulled it.  Moreover, as expert testimony revealed,
> the P320 had a 6.7 pound trigger, meaning that to fire, the user had to exert 6.7 pounds of
> pressure.  The court does not believe that Guay could have applied that amount of force to
> the trigger inadvertently while the gun was in the holster.  In short, the court found Guay's
> testimony about the gunshot, how it occurred, and his resulting injuries consistent and
> believable.  The court therefore places great weight on Guay's testimony.

Docket No. 108, p.5.

Regarding the defendant's expert witnesses, the Court stated:

> To the extent that Watkins and Toner testified that it is impossible for a P320 (or for
> Guay's P320) to have fired without a trigger pull, the court finds their opinions

4

unpersuasive.  As discussed, the court found credible Guay's testimony that he did not pull the trigger, and the video of the Roscommon incident[3] was persuasive in showing that a P320 can fire without a trigger pull.  Furthermore, Watkins admitted that – despite having read the numerous allegations of misfires (without a trigger pull in the complaint – he did not deem theem worthy of mention in his expert report.  And Toner testified that he found such misfire allegations unworthy of investigation.  Had Watkins and Toner been less dismissive of these allegations, the court may have found their testimony more credible.

Docket No. 108, p. 13, fn. 2.

The jury in this case, led by a foreman whose eyes were frequently closed throughout the presentation of evidence, was obviously strongly divided as to who should prevail in the case.  It submitted no less than five questions to the Court after the close of evidence and demanded an in-court demonstration of the gun being removed from the Sig holster by a U.S. Marshal.  Despite all the questions and the in-court demonstration, the jury came back hung after a full day of deliberations.  Ex. 4.

The *Allen* charge the Court read to the jury contained a paragraph re-stating the plaintiff's burden of proof in the context of how the jury might resolve its division.  Counsel for Guay objected to this language as unnecessarily and unfairly re-reciting the plaintiff's burden of proof when it had already been explained to the jury before.  There is a paucity of case law on this matter, however a case on point holds that where the trial judge was of the opinion that the jury

---

[3]     In its September Order, the Court seemed to overlook the evidence at trial that Sig claimed to have lost its copy of the February 2016 Roscommon incident.  30(b)(6) testimony of Al Larochelle. (Ex. 4).  But it is a reasonable inference of fact that Sig got rid of the DVD on purpose, and that it was notified of the Roscommon incident close in time to its occurrence.  The notion that a police department would wait three years to communicate with a gun manufacturer over a catastrophic gun failure is simply not believable.  A fact finder is entitled to "use its common sense" in rendering a decision.  *United States v. Woodward,* 149 F.3d 46, 64 (1st Cir. 1998).  In addition, the Court, sitting as fact finder under the CPA count, was free to infer, reasonably, spoliation of evidence from the purportedly "lost" DVD of the Roscommon incident.  *Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1159 (1st Cir. 1996) ("[t]he defendant also chastises the court for admitting evidence of another missing record. The security officer's log for November 13, 1992 could not be located, and the judge permitted evidence of that fact to go to the jury. Once again, the ruling cannot be faulted. *The defendant had no good explanation for the missing log, and the jury was entitled to infer that the defendant destroyed it in bad faith*) (emphasis added).

should have returned for the plaintiff, and an *Allen* charge, was read, the court has discretion to order a new trial:

> The district judge was quite frankly of the opinion that on the first trial the verdict should have gone for the plaintiff. The jury had reported in writing that, 'We the jury are unable to reach a decision.' Neither party having objected, it cannot be said that the reading of the Allen charge was an abuse of discretion on the part of the district judge. When, however, under all the circumstances, the judge concluded that the giving of that charge had the effect of coercing the jury and of causing it to return an unjust verdict, it became his duty to grant a new trial. In so doing, he did not abuse the broad discretion vested in him.

*N. Texas Producers Ass'n v. Metzger Dairies, Inc.,* 348 F.2d 189, 193 (5th Cir. 1965)

In this case, counsel for Guay did object to the charge based on what he contended was prejudicial language re-reciting the plaintiff's burden of proof when the jury had already been instructed on it. And it appears that the instruction did have prejudicial effect as the jury returned in a matter of minutes after hearing the charge (at the end of a long day), whereas they had been deadlocked all day before. The Court has discretion to order a new trial under all these circumstances.

**B.**     ***The Judgment should be amended to find for Guay on his CPA count.***

Guay testified was that he did not return his P320 because the *website* language of Sig's voluntary upgrade program informed him that it was still "safe" in its current configuration. Plaintiff's Trial Exhibit 25 (Ex. 2). At no time did he testify that he read much less relied on Sig's August 4, 2017 press release in which Sig admitted it had knowledge of not just drop fires, but

defective discharges resulting from vibration.

Therefore, from August 2017 to the time Guay was shot in January 2020, Sig had been speaking out of both sides of its mouth, i.e., the gun was safe, but also not safe; it is impossible for it to fire without a trigger pull, but it can fire without a trigger pull upon certain inertial impacts, including vibration;[4] you can return it if you want, but you don't have to; but if you don't, we will fault you for not returning it if you get shot by it.  These obviously duplicitous communications constitute the essence of reckless deception or "rascality," especially when the product is as lethal as a gun.

Finally, in its November 8, 2022 order the Court wrote that Guay introduced no evidence at trial "connecting the mechanical relationship between the 'drop-fire' problem identified by the Army and the accidental misfire that Guay experienced."  Guay introduced the testimony of two experts, Timothy Hicks, a mechanical engineer, and Peter Villani, who opined that manufacturing defects inside the P320 make it susceptible to discharging even when merely jostled.  Both stated that this was due the precarious engagement between the spring-charged striker foot and sear face connection, and excess metal left on those surfaces which reduce the area of surface connection between those two critical parts.  Both testified that Sig is not machining those surfaces flat. Hicks also specifically testified that the engagement between the striker foot and the sear face is no more than the thickness of eight pieces of paper.  Toner himself admitted at trial that forces other than a drop could make that connection fail and allow the P320 to fire without a trigger pull. Ex. 3.

---

[4]       *See* Ex. 3, excerpt of trial testimony of Sean Toner.  In the space of one page of testimony, Toner states that it is impossible for the P320 to fire without a trigger pull, but that it also possible under certain conditions.

**IV.**    **Conclusion**

For the reasons stated, plaintiff Guay requests that his Motion be granted.


                                                  Respectfully submitted,

                                                  KYLE GUAY

                          By:

                                              /s/   *Jeffrey S. Bagnell*_____
                                              Jeffrey S. Bagnell
                                              Federal Bar No. CT18983
                                              Admitted Pro Hac Vice
                                              Jeffrey S. Bagnell, Esq., LLC
                                              55 Post Road West, Suite 200
                                              Westport, Connecticut 06880
                                              (203) 984-8820
                                              jeff@bagnell-law.com



                                              Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11ᵗʰ day of  October 2022, undersigned counsel will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Kristen E. Dennison, Esq.
Kristen.dennison@littletonpark.com

B. Keith Gibson, Esq.
Keith.gibson@littletonpark.com

Mark V. Franco, Esq.
Mfranco@dwmlaw.com

Counsel for defendant SIG Sauer, Inc.

By:        __/s/  *Jeffrey S. Bagnell*_____
Jeffrey S. Bagnell