IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KYLE GUAY,<br><br>        Plaintiff,<br><br>v.<br><br>SIG SAUER, INC.,<br><br>        Defendant. | Civil Action No.: 1:20-CV-00736-LM |

### SIG SAUER, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT

Defendant Sig Sauer, Inc. ("Sig Sauer") respectfully submits this Memorandum of Law in opposition to Plaintiff's Motion for Relief from Judgment [ECF No. 116] ("Motion"). For the reasons discussed below, Plaintiff's Motion should be denied in its entirety.

### RELEVANT PROCEDURAL HISTORY

This Court entered final judgment in favor of Sig Sauer on September 9, 2022. *See* ECF No. 109. On October 11, 2022, Plaintiff filed a Motion for New Trial pursuant to Federal Rule of Civil Procedure 59(a), or, in the Alternative, to Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59 Motions"). *See* ECF Nos. 110, 111. On October 19, Sig Sauer filed a Motion to Strike Plaintiff's Rule 59 Motions as untimely because they were filed 32 days after the entry of judgment in violation of Fed. R. Civ. P. 59(a) and 59(e), which require that motions for a new trial and motions to amend a judgment be filed no later than 28 days after the entry of judgment. *See* ECF No. 113. On October 24, Plaintiff moved to withdraw its Rule 59 Motions. *See* ECF No. 117.

The next day, Plaintiff filed the present Motion, seeking relief from the Court's judgment "on the grounds that it contains a significant factual error." *See* Memorandum in Support of Motion

for Relief from Judgment [ECF No. 116-1] ("Mot.") at 1. While Plaintiff's moving papers refer to Fed. R. Civ. P. 60(b)(2), which addresses "newly discovered evidence" as grounds for relief, the Motion appears to in fact be premised entirely on an alleged "mistake" pursuant to Fed. R. Civ. P. 60(b)(1), which is the provision Plaintiff discusses in the "Governing Law" section of his memorandum in support. *See* Mot. at 2.

Plaintiff has not filed an appeal from the September 9, 2022 Final Judgment and his time to do so has long since passed.

As discussed below, for multiple reasons, Plaintiff is not entitled to relief from the Court's judgment that his Rule 60 motion seeks.

**ARGUMENT**

**I.  Plaintiff is not entitled to relief because an alleged error of the Court is not a "mistake" under Rule 60(b)(1).**

Under Federal Rule of Civil Procedure 60(b)(1), the court may relieve a party of a final judgment for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. Proc. 60(b)(1). The First Circuit has emphasized that "[b]ecause Rule 60(b) is a vehicle for extraordinary relief, motions invoking the rule should be granted only under exceptional circumstances." *Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe*, 257 F.3d 58, 64 (1st Cir. 2001) (internal quotations marks and citations omitted); *see also Rivera-Velazquez v. Hartford Steam Boiler Inspection & Ins. Co.*, 750 F.3d 1, 3–4 (1st Cir. 2014), quoting *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002) ("motions invoking that rule should be granted sparingly"). "Thus, a party who seeks relief under the rule must establish, at the very least, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair

prejudice will accrue to the opposing parties should the motion be granted." *Id.* (internal quotation marks omitted).

Critically, under well-established First Circuit law, relief from a judgment is *not* available under Rule 60(b)(1) on grounds of an alleged "mistake" of the court, as opposed to that of counsel or the litigants. *Silk v. Sandoval*, 435 F.2d 1266, 1267 (1st Cir. 1971). In *Silk*, the court examined at length the question of whether a district court's erroneous ruling could constitute a "mistake" under this provision and held that it was illogical to construe "mistake" so broadly that the relief available under Rule 60(b)(1) would override the stricter requirements and time limitations of Rule 59:

> A contrary view, that 'mistake' means any type of judicial error, makes relief under the rule for error of law as extensive as that available under Rule 59(e), which permits motions to 'alter or amend judgments.' Obviously any such motion presupposes a mistake. Indeed, the argument advanced is that a broad construction of 'mistake' beneficially extends the ten-day limit for motions under Rule 59(e). Calling this a benefit loses sight of the complementary interest in speedy disposition and finality, clearly intended by Rule 59.

*Id.* at 1268.

First Circuit courts have repeatedly upheld the holding in *Silk* and rejected arguments that an erroneous ruling of the court is a "mistake" for purposes of Rule 60(b)(1). For instance, in *Warner v. McLaughlin*, where the plaintiffs argued in support of a Rule 60(b)(1) motion that the court made mistakes of fact in concluding that they had failed to show a violation of a particular statute, the court held: "Under First Circuit precedent, the "mistake" in Rule 60(b)(1) is the mistake of a party, not a court. For that reason, relief is not available under Rule 60(b)(1) to correct any alleged errors of fact made by a court." No. 16-CV-34-JD, 2017 WL 3025854, at *2 (D.N.H. July 17, 2017), *aff'd*, No. 17-1791, 2017 WL 7731243 (1st Cir. Nov. 1, 2017) (citations omitted). *See also Venegas–Hernandez v. Sonolux Records*, 370 F.3d 183, 188–89 (1st Cir. 2004) ("One might, and some courts do, think that Rule 60(b)(1)'s reference to "mistake" as a grounds for relief from

judgment includes this type of error of law. But this circuit decided that question the other way in 1971."); *In re Foistner*, No. BR 17-10796-BAH, 2018 WL 2539294, at *14 (Bankr. D.N.H. May 31, 2018) ("Under First Circuit precedent, "mistake" under Rule 60(b)(1) does not apply to a court's mistaken ruling on a point of law because such a reading would undermine the stricter requirements for seeking to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e)."); *Hum. v. New Hampshire*, No. 13-CV-547-LM, 2014 WL 5824645, at *1 (D.N.H. Nov. 10, 2014) ("Rule 60(b)(1) motions, like plaintiff's, filed after the time for appeal has run, asserting the district court's mistake of law as the basis for granting relief from judgment, are generally denied.").

Here, Plaintiff's entire Motion is premised on two alleged "errors of fact" in the Court's September 8, 2022 Order [ECF No. 108]. *See* Mot. at 1-2. Specifically, Plaintiff argues: (1) that the Court's statement that he "relied on" the language in two Sig Sauer press releases that "persuaded" him there were no safety concerns with his P320, and he saw no reason to send it in for repair is "inaccurate," Mot. at 1, and (2) that the Court's statement that there was "no evidence" introduced at trial that Sig Sauer "had any reason to issue a recall for the accidental misfire problem that Guay later experienced" was "also an error of fact." Mot. at 2. As such, Plaintiff's Motion runs squarely afoul of well-settled First Circuit case law, discussed above, holding that a court's alleged erroneous ruling is not a "mistake" for purposes of Rule 60(b)(1). Plaintiff's Motion should be denied on this basis alone.

## II. **Plaintiff's Motion was not filed within a "reasonable time" as required by Rule 60(c)(1).**

Even assuming that Plaintiff could establish a viable basis for relief under Rule 60(b)(1), which he cannot, the Motion should be denied because it was not filed within a "reasonable time." All Rule 60(b) motions must be made "within a reasonable time," with an outer limit of one year from the date of the challenged judgment or order for motions brought pursuant to Rule 60(b)(1),

(2), and (3). *See* Fed. R. Civ. Proc. 60(c)(1). Courts determine what constitutes a "reasonable time" by examining the facts of each case, and relevant considerations include the interest in finality, the reason for delay, the practical ability to learn earlier of the grounds relied upon, and prejudice to other parties. *See United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 660–61 (1st Cir.1990); *Santana v. United States*, No. 05-CV-64-JD, 2010 WL 2720610, at *2 (D.N.H. July 7, 2010).

Consistent with its reasoning in *Silk v. Sandoval*, discussed above, the First Circuit has held that "the use of Rule 60(b) as an escape from [the time limitation under Rule 59] introduces an unacceptable contradiction to an important principle underlying the finality of judgments." *Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 154 (1st Cir. 1980) (finding that the court's error in adding pre-judgment interest to a verdict was "one which defendant could have reached not only on the appeal from the judgment but also by a timely motion in the district court under Rule 59(e) to alter or amend the judgment"). The court in *Scola* echoed the *Silk* court's reasoning that interpreting the term "mistake" as used in Rule 60(b)(1) to mean any type of judicial error would make relief under the rule based on error of law as extensive as the relief available under Rule 59(e), in turn effectively extending the time limit under Rule 59(e) and undermining the interest in speedy disposition and finality. *Id.* at 153-54.

Here, Plaintiff has merely restyled his motion to amend the judgment under Rule 59(e) as a motion for relief under Rule 60(b)(1) to benefit from Rule 60(b)'s less restrictive time requirements, as evidenced by functionally identical factual narratives in both of his motions describing the alleged "errors of fact" made by the Court. *See* Rule 59 Motions [ECF No. 111-1] at 1-3; Mot. at 1-2. In other words, having inexplicably missed the deadline to file a Rule 59(e) motion, Plaintiff is attempting to bring the same motion under Rule 60(b)(1). This is precisely the type of Rule 60(b)(1) motion the First Circuit has rejected on the grounds that it would subvert the

goals of expediency and finality intended by Rule 59(e). In addition, given that the grounds Plaintiff relies upon were, without question, known to him upon the Court's entry of its September 8, 2022 Order, there can be no justification for his delay that would make the timing of the present Motion "reasonable" under Rule 60(c)(1). In light of the above, Plaintiff's motion should also be denied as untimely.

### III. Plaintiff's substantive arguments would fail even if they had been presented in a procedurally proper manner because the Court's Consumer Protection Act ruling was not the product of a "mistake of fact."

Plaintiff identifies what he claims are two mistakes of fact made by the Court in his attempt to re-litigate his Consumer Protection Act claim under a new theory that was not addressed by the Court in its Order dated September 8, 2022. As the Court explained in its Order, "Guay's theory of liability at trial was that Sig Sauer violated the CPA when it advertised that the P320 was safe and that it 'won't fire unless you want it to.'" *See* ECF No. 108, p. 15. That theory having been rejected by the Court, Plaintiff now seeks to pivot to a new CPA theory involving Sig Sauer's reference to "vibration" in its August 4, 2017 press release. In order to support his new CPA theory, Plaintiff identifies two alleged "mistakes" of fact. Both "mistakes," however, are based on an attempt by Plaintiff to re-write the evidentiary record by ignoring Mr. Toner's uncontradicted testimony regarding what Sig Sauer meant when it used the term "vibration" and substituting Plaintiff's own self-serving interpretation. The Court should prohibit Plaintiff from re-litigating his CPA claim under a new theory and should reject his attempts to manufacture the appearance of "mistakes" of fact by ignoring the record evidence.

Plaintiff claims that the Court mistakenly believed that he read Sig Sauer's August 4, 2017 and August 8, 2017 press releases. As explained above, this is not the type of "mistake" that can be addressed through a Fed. R. Civ. P. 60(b)(1) motion because Rule 60 only permits the correction of mistakes of a ***party, not the Court***. *See Warner*, 2017 WL 3025854, at *2 ("Under First Circuit

precedent, the "mistake" in Rule 60(b)(1) is the mistake of a party, not a court. For that reason, relief is not available under Rule 60(b)(1) to correct any alleged errors of fact made by a court.") (citations omitted).

Even if this were the type of mistake that could be corrected through a Rule 60(b)(1) motion, correcting it would not change the outcome of Plaintiff's CPA claim. First and foremost, there is no evidence in the record indicating that Plaintiff *did not* read the press-releases in question. Plaintiff asserts that "[a]t no time did he testify that he ever saw much less relied on the August 4, 2017 press release in concluding that his P320 was still safe." *See* ECF No. 116-1, p. 2. While that is true, Plaintiff conveniently omits the fact that he never provided any testimony regarding whether or not he saw or relied on the August 4, 2017 press release. *See* N.T. 7/19/2022, P.M. pp. 50-117 (Ex. A). As a result, it is equally true that Plaintiff never testified that he did not see or rely on the August 4, 2017 press release, which was available through Sig Sauer's website, which Plaintiff admits he accessed. Plaintiff bears the burden of proof on his CPA claim, and it was his obligation to build a record that supported his claim at trial. He failed to do so and cannot now rely on the lack of evidence regarding whether or not he saw and purportedly relied upon the August 4, 2017 press release as affirmative evidence that he did not see it.

Even if Plaintiff had adduced evidence that he never saw the August 4, 2017 press release, however, Plaintiff's new theory of CPA liability would still fail. In order to prevail, Plaintiff would have to prove that Sig Sauer knew in August 2017 that the P320 model pistol could discharge without a trigger pull under the conditions described by Plaintiff.[1] He failed to do so, and this Court already held as much, explaining in its September 8, 2022 Order that "there was no evidence

---

[1] Sig Sauer denies that any P320 model pistol—including Plaintiff's—can discharge without trigger actuation as evidenced by the fact that no expert has ever replicated a discharge without a trigger pull. Sig Sauer recognizes that this Court concluded otherwise in its Order.

introduced at trial that (at the time of the upgrade program in August 2017) Sig Sauer had any reason to issue a recall for the accidental misfire problem that Guay later experienced." *See* ECF No. 108, p. 7. The only evidence in the record regarding an unintentional discharge that occurred prior to August 2017—when the press releases Plaintiff complains about were issued—relate to an incident involving a Roscommon County Sheriff's Deputy that occurred in February 2016. As argued at trial, Sig Sauer was informed by the Roscommon County Sheriff's Office that its investigation into that incident determined that the discharge occurred because the deputy's seatbelt latch got into the trigger area on his P320 pistol due to the large opening at the top of the holster and caused the trigger to be pulled as the deputy stood to exit his vehicle. *See* Knox Aff., Trial Ex. JJ (Ex. B); Burmester Aff., Trial Ex. KK (Ex. C). Thus, Plaintiff cannot cite to any record evidence to support his claim that Sig Sauer had knowledge of accidental discharges occurring under conditions similar to what Plaintiff claims he experienced when Sig Sauer issued its August 4, 2017 press release.

Plaintiff's new CPA theory is also grounded in a baseless distortion of what Sig Sauer meant when it indicated in the August 4, 2017 press release that acute vibration could possibly have a negative effect on the safety mechanisms in the P320 model pistol. Plaintiff twists Sig Sauer's reference to "vibration" to suit his needs, suggesting that it constitutes an admission that Sig Sauer was aware that routine carrying of a P320, and/or inserting into and removing the pistol from a holster could expose it to vibrations that might cause the pistol to discharge without a trigger pull. Not true. As Sean Toner testified at trial, that is not what Sig meant when it used the word "vibration":

> Q: Now, plaintiff's counsel in this case has suggested that in this statement Sig Sauer recognizes that mere vibration consistent with normal carrying, holstering, unholstering of

>> Q: a pistol is sufficient to cause the mechanical safeties not to work as designed. Is that what Sig Sauer is saying here?
>
> A: No. What we're saying is that under acute conditions or extreme severe conditions that is a possibility.
>
> Q: So what does acute conditions refer to? What types of conditions are acute?
>
> A: Very severe, sharp. So quick impacts. Things like that.

*See* N.T. 7/21/2022 A.M. p. 82 (Ex. D).[2] In fact, Mr. Toner testified that Sig Sauer has never determined that carrying the pistol in the same manner as Plaintiff at the time of the discharge could allow a P320 to discharge as a result of vibration:

> Q: So just to be clear, has Sig Sauer ever determined that carrying the pistol under normal conditions, including holstering and unholstering of the pistol, could allow the P320 to discharge without a trigger pull?
>
> A: No, it cannot.
>
> Q: And has Sig Sauer ever determined that mere vibration as opposed to acute, severe, extreme conditions could cause the internal safety of the P320 pistol not to operate as designed?
>
> A: No, they cannot.

*See* N.T. 7/21/2022 A.M., p 83 (Ex. D). Mr. Toner's testimony is consistent with Plaintiff's experts' inability to replicate a vibration-induced discharge of a P320 model pistol. *See* N.T. 7/20/2022 P.M., pp. 11, 80 (Ex. E). It is also consistent with the shock and vibration testing that Sig Sauer introduced as evidence at trial, which showed that even intense, sustained vibration will not cause a P320 model pistol to discharge. *See* Dayton Brown Rpt. (Excerpt) (Ex. F).

---

[2] This is consistent with the basic definition of "acute," which refers to a sudden onset and sharp or severe condition, not routine day-to-day conditions as Plaintiff suggests. *See* https://www.merriam-webster.com/dictionary/acute. In referring to Sig Sauer's use of the term "vibration" in its press release, Plaintiff consistently—and intentionally—ignores the inclusion of "acute conditions" because it does not fit his narrative or the evidence.

Plaintiff's second alleged "mistake" of fact is not a mistake at all for this reason.[3] Plaintiff argues that the Court made a mistake of fact in concluding "that there was 'no evidence' introduced a trial [sic] that Sig Sauer 'had any reason to issue a recall for the accidental misfire problem that Guay later experienced.'" *See* ECF No. 116-1, p. 2. Plaintiff's sole explanation for why this was a "mistake" of fact is that, in the August 4, 2017 press release, Sig Sauer "openly admitted that not merely dropping the P320 could make it fire, but that vibration could make it fire." *See* ECF No. 116-1, p. 2. As discussed above, Plaintiff's mischaracterization of what Sig Sauer meant when it referred to acute vibration is directly contradicted by the evidence of record.

In short, Plaintiff's new CPA theory and alleged mistakes of fact are based on an interpretation of what Sig Sauer meant when it referred to acute vibration that is directly contradicted by the evidence of record. This Court should prohibit Plaintiff from re-litigating his CPA claim under a new theory because it was not presented at trial and because it would fail as a matter of law. This Court should also reject Plaintiff's request for relief from judgment based on alleged mistakes of fact because neither alleged mistake is the type of mistake that Rule 60(b)(1) was designed to address. Even if they were, however, the evidence of record demonstrates that neither alleged mistake of fact was, in fact, a mistake.

## CONCLUSION

For the reasons stated herein, Sig Sauer requests that the Court deny Plaintiff's Motion in its entirety.

Respectfully submitted,

Dated: November 7, 2022

      /s/ B. Keith Gibson
      B. Keith Gibson, Esq. (Admitted *Pro Hac Vice*)

---

[3] And, just like Plaintiff's first alleged mistake of fact, Plaintiff's second alleged mistake of fact is not the type of "mistake" that can be addressed through a Fed. R. Civ. P. 60(b)(1) motion because Rule 60 only permits the correction of mistakes of a ***party, not the Court***. *See Warner*, 2017 WL 3025854, at *2.

- 10 -

Robert L. Joyce, Esq. (Admitted *Pro Hac Vice*)
Kristen E. Dennison, Esq. (Admitted *Pro Hac Vice*)
Littleton Park Joyce Ughetta & Kelly, LLP
The Centre at Purchase
4 Manhattanville Road, Suite 202
Purchase, NY 10577
Tel.: (914) 417-3400

/s/ Mark V. Franco
Mark V. Franco, Esq. (NH Bar No. 16708)
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101
Tel.: (207) 772-1941

*Attorneys for Defendant Sig Sauer, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2022, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

/s/ Mark V. Franco
Mark V. Franco, Esq. (NH Bar No. 16708)
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101
Tel.: (207) 772-1941
